The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Sergey G. NOVITSKIY, Defendant–Appellant.

No. 01CA1269.

Colorado Court of Appeals, Div. V.

April 24, 2003.

Rehearing Denied June 19, 2003.

Certiorari Denied Jan. 12, 2004.

Ken Salazar, Attorney General, Peter J. Cannici, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Mark G. Walta, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge NIETO.

Defendant, Sergey G. Novitskiy, appeals the judgment of conviction entered upon jury verdicts finding him guilty of two counts of forgery, § 18–5–102(1)(c), C.R.S.2002, class five felonies; unlawful use of a financial transaction device, § 18–5–702, C.R.S.2002, a class two misdemeanor; and theft, § 18–4–401, C.R.S.2002, a class three misdemeanor. We reverse and remand for a new trial.

Defendant, who was working as a clerk in a department store, assisted a customer in making a purchase using a credit card. A short time later that day, the customer's credit card was used at another shopping center to make a purchase in one store and in an attempt to make a purchase in another store. Defendant was identified as the person using the customer's credit card in both stores, although the identification was disputed.

## I.

Defendant contends that the trial court committed reversible error by admitting evidence that he had previously been accused of conduct similar to that alleged here. We agree.

Over defendant's objection that the testimony constituted evidence of other uncharged criminal conduct, a police officer was allowed to testify that during an interview, defendant had stated "that he was accused of doing something similar like this before," but, "there wasn't any evidence to pursue charges." The trial court admitted this evidence, finding that defendant had in fact made the statement, and "there is some relevance to it." The court did not analyze the evidence using the four-part test announced in *People v. Spoto,* 795 P.2d 1314 (Colo.1990), and more fully explained in *People v. Rath,* 44 P.3d 1033 (Colo.2002).

The admissibility of evidence of uncharged criminal conduct is governed by CRE 404(b). *People v. Rath, supra.*

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

CRE 404(b).

■ Prior to admitting evidence under CRE 404(b), the trial court must conclude by a preponderance of the evidence that the uncharged conduct occurred and that the defendant was the perpetrator. *People v. Garner,* 806 P.2d 366 (Colo.1991).

■ Here, the only evidence relating to uncharged criminal conduct was the officer's testimony relating defendant's statement. However, defendant did not admit that he had engaged in such conduct; he only stated that he was accused of it and there was not any evidence to pursue charges. Thus, there was no evidence that defendant had engaged in prior uncharged criminal conduct. Therefore, the threshold requirement for CRE 404(b) evidence was not met, and the trial court erred in admitting the officer's testimony.

■ Failure to conduct the *Spoto* and *Garner* analysis of CRE 404(b) evidence is not reversible error if the record supports the trial court's admission of the evidence. *People v. Martinez,* 36 P.3d 154 (Colo.App. 2001). However, here defendant's statement was the only evidence in the record relating to the uncharged conduct, and that statement alone is not sufficient to justify admission of the evidence.

■ The prosecution argues that this error was harmless. We are not persuaded. The proper inquiry in determining a harmless error question is not whether there was sufficient evidence to support the verdict without the improperly admitted evidence, but, rather, whether the error substantially influenced the verdict or affected the fairness of the trial proceedings. If a reviewing court can say with fair assurance that, in light of the entire record of the trial, the error did not substantially influence the verdict or impair the fairness of

the trial, the error may properly be deemed harmless.

*People v. Gaffney,* 769 P.2d 1081, 1088 (Colo. 1989) (citations omitted).

The prosecution argues that the evidence of defendant's guilt was so overwhelming that the erroneous admission of defendant's statement did not substantially influence the verdict or impair the fairness of the proceedings. In evaluating this argument, we must look at the harm CRE 404(b) was designed to prevent.

■ "[E]vidence of similar acts has inhering in it damning innuendo likely to beget prejudice in the minds of jurors. . . ." *Stull v. People,* 140 Colo. 278, 284, 344 P.2d 455, 458 (1959); *see People v. Garner, supra* (reasons set forth in *Stull* for excluding other crime evidence remain applicable after adoption of CRE 404(b)). Other crimes or bad acts evidence exposes a defendant to the risk of being found guilty based on bad character rather than evidence relating to the charged offense. *People v. Garner, supra.*

Here, the suggestion that defendant may have avoided prosecution for a prior similar crime could have caused the jury to disregard his defense of misidentification. The guilty verdict depended in large part on the identification evidence, and therefore, we cannot say with fair assurance that the error did not substantially influence the verdict or affect the fairness of the trial. Therefore, we reject the prosecution's harmless error argument.

Accordingly, we conclude that it was reversible error to admit defendant's statement about prior accusations of misconduct absent compliance with the requirements of *Spoto* and *Garner.*

## II.

Because the issue may arise in a subsequent trial, we address defendant's contention that the offense of unauthorized use of a financial transaction device, § 18–5–702, requires proof that the defendant "obtained" cash, credit, property, or services. We agree.

Our purpose in construing a statute is to ascertain and give effect to the legislative intent expressed therein. We must read and consider the statute as a whole and interpret it to give harmonious effect to all its parts. *State v. Nieto*, 993 P.2d 493 (Colo.2000). We look first to the language of the statute, giving words their commonly accepted meaning and avoiding a strained or forced interpretation. *People v. Trusty*, 53 P.3d 668 (Colo.App.2001).

Here, defendant allegedly used a credit card without authorization in two stores. In one store he received goods, but in the other store the transaction was interrupted, and he did not receive any goods. The value of the goods involved in both stores was combined, as permitted by § 18–5–702(4), C.R.S.2002, to reach the value necessary to constitute a class two misdemeanor.

As relevant here, § 18–5–702(1), C.R.S. 2002, defines the offense as the unauthorized use of a financial transaction device "for the purpose of obtaining" certain things of value. Section 18–5–702(3), C.R.S.2002, defines the class of the offense based upon the value of the things "obtained." Likewise, § 18–5–702(4) defines value as the total value of the things "obtained."

"Obtain" means "to gain or attain possession or disposal of [something] usually by some planned action or method." *Webster's Third New International Dictionary* 1559 (1986).

The interpretation urged by defendant gives effect to all the terms in the statute without giving them an unusual or strained meaning. Using a financial transaction device "for the purpose of obtaining" things of value can be read to mean either that things of value were in fact obtained or that defendant attempted to obtain them. However, the term "obtained," as used in § 18–5–702(3) and (4), cannot be read to include an attempt to obtain things of value without adding language to the statute.

The prosecution, relying on § 18–5–702(1), interprets the statute as defining a crime that is complete once the perpetrator makes unauthorized use of a financial transaction device *for the purpose of* obtaining things of value. Thus, the prosecution views the crime as complete even if the perpetrator does not complete the transaction and does not receive a thing of value. This is a logical reading of § 18–5–702(1) in isolation, but it is inconsistent with the classification of offenses in § 18–5–702(3) based on the value of the things obtained and with the definition of "value" in § 18–5–702(4). Because we must read the statute as a whole and give harmonious effect to all its parts, we reject that interpretation.

If we were to adopt the prosecution's interpretation of § 18–5–702(1), it would define a crime without a penalty because § 18–5–702(3) provides penalties only if things of value are "obtained." *See* § 18–1–104, C.R.S.2002 ("crime" means conduct for which a fine or imprisonment may be imposed). "A criminal statute must include a penalty for committing the acts proscribed, and a criminal prohibition without a penalty is unenforceable." *Olinyk v. People*, 642 P.2d 490 (Colo.1982).

Further, a defendant who engages in conduct constituting an attempt to make unauthorized use of a financial transaction device can be charged with the inchoate crime of criminal attempt, § 18–2–101, C.R.S.2002. Therefore, the prosecution is not without a remedy if a person engages in conduct similar to that alleged here.

Accordingly, we construe § 18–5–702 to require that a defendant in fact obtain possession or use of cash, credit, property, or services through the unauthorized use of a financial transaction device.

### III.

Defendant also contends that the penalty for forgery under § 18–5–102 violates equal protection principles and that his conviction under both §§ 18–5–102 and 18–5–702 violates double jeopardy principles. Because these constitutional issues were not raised in the trial court, we decline to consider them. *See People v. Cagle*, 751 P.2d 614 (Colo.1988)(axiomatic that appellate court will not consider constitutional issues raised for first time on appeal).

The judgment is reversed, and the case is remanded for a new trial.

Judge TAUBMAN and Judge CASEBOLT concur.