The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Paul LOPEZ, Defendant–Appellant.

No. 03CA0049.

Colorado Court of Appeals, Division V.

July 28, 2005.

Certiorari Denied March 20, 2006.*

* Justice EID does not participate.

Justice BENDER would grant as to the following issue:

Whether the court of appeals erred in determining that comments vouching for the credibility of the alleged victims by the lead detective and the prosecution were admissible as a description of the detective's interrogation technique in this case.

John W. Suthers, Attorney General, Karen E. Lorenz, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Jason C. Middleton, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by: Judge DAILEY.

Defendant, Paul Lopez, appeals the judgments of conviction and sentences entered upon jury verdicts finding him guilty of two counts each of sexual assault on a child by one in a position of trust and sexual assault on a child as part of a pattern of abuse. We affirm.

Defendant, a former teacher in the Denver Public School system, was charged with having performed sex acts eight to ten years earlier with and on two middle school students with whom he had established a mentor relationship. The two students, who were brothers, testified at trial; a third student testified to similar acts performed with and on him by defendant, at about the same time. A detective also related that defendant had admitted engaging in the various acts of sexual misconduct with the three boys.

Defendant attacked the credibility of the prosecution's witnesses. To the one victim

who had made a somewhat timely complaint, defendant attributed a motive of revenge for his having interfered in the victim's relationship with a girl. He inquired why the other victim had affirmatively denied, until only recently, any allegation of misconduct by defendant. And he inquired why the third student had not come forth with any allegation of misconduct until recently.

Defendant testified on his own behalf. He disputed the three boys' accusations and denied having made any admissions of misconduct to the detective.

The jury found defendant guilty, and the trial court sentenced him to two consecutive twenty-six-year terms on the two counts of sexual assault as part of a pattern of abuse, and two concurrent sixteen-year terms on the two counts of sexual assault by one in position of trust.

### I. Evidence of Other Bad Acts

Defendant contends that reversal is required because, in two instances, other bad act evidence was improperly injected into the case. We disagree.

In the first instance, the detective who investigated one victim's initial complaint in 1994 testified that he had also "interviewed another victim." In the second, the detective who interrogated defendant testified he told defendant that the third student had made a complaint and "that many other kids had come forward, and [the detective] started naming names."

When read in context, the detective's statements clearly imply that defendant had been accused of or had committed crimes of sexual misconduct involving other children.

■ "[E]vidence of similar acts has inhering in it damning innuendo likely to beget prejudice in the minds of jurors . . . ." *People v. Novitskiy*, 81 P.3d 1070, 1072 (Colo.App.2003)(quoting *Stull v. People*, 140 Colo. 278, 284, 344 P.2d 455, 458 (1959)). Unless admitted pursuant to CRE 404(b) and, here, because of the nature of the alleged other activity, § 16–10–301, C.R.S. 2004, such evidence unfairly exposes a defendant to the risk of being found guilty based on bad character rather than on evidence

relating to the charged offense. *See People v. Garner*, 806 P.2d 366, 369–70 (Colo.1991).

■ However, improper reference to a defendant's other bad acts is not per se reversible error. *See Vigil v. People*, 731 P.2d 713, 716 (Colo.1987)(improper reference to other bad acts evidence found harmless); *People v. Vigil*, 718 P.2d 496, 505–06 (Colo.1986)(improper reference to other bad acts evidence did not require mistrial).

### A. First Incident: "Another Victim"

■ Defendant objected to the detective's testimony about "another victim,"but only on hearsay grounds. Because he did not object on the ground that the detective's testimony impermissibly raised the spectre of other bad acts, our review is limited to determining whether the error rises to the level of plain error. *See People v. Kruse*, 839 P.2d 1, 3 (Colo.1992). We conclude that it does not rise to that level.

■ Plain error is error "that is obvious, substantial, and grave"; it is error that so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Moore v. People*, 925 P.2d 264, 268–69 (Colo. 1996); *see also People v. Miller*, 113 P.3d 743, 750 (Colo.2005).

We perceive neither obvious nor grave error arising from the first incident. In light of what the jury already knew from opening statements, it may well have interpreted the detective's remark as referring to one of the other two young men whom it expected to testify that defendant had sexually assaulted them. Thus viewed, the detective's statement was not so inflammatory that the jury could not disregard it, as instructed by the court. *See People v. McNeely*, 68 P.3d 540, 542 (Colo.App.2002)(a curative instruction is sufficient to overcome an evidentiary error, except when the evidence is so prejudicial that, but for its exposure, the jury might not have found against the defendant).

### B. Second Incident: "Many Other Kids Had Come Forward"

■ Defendant objected and requested a mistrial after the second detective testified

that he had told defendant "many other kids had come forward" and he "started naming names."

The detective had previously provided similar testimony in a preliminary hearing; at the time, however, he had related the names of the children who testified at trial as well as two additional children. References to, and testimony from, these additional children were excluded prior to trial on CRE 404(b) grounds.

The prosecution proposed to "cure" the problem at trial by asking the detective whether his reference to "many other victims" meant the two victims in this case. Defendant acceded to this proposal. But the prosecution failed to ask that precise question. Instead, the prosecution asked only whether, in "mention[ing] other victims [to defendant]," the detective was "referring to" the two alleged victims in this case, to which the detective responded, "Yes."

■ Defendant did not, however, renew his objection. And, by acceding without objection to the prosecution's attempt to cure the problem, he waived his right to assert error on appeal. *See United States v. Walton,* 255 F.3d 437, 441 (7th Cir.2001) (clarifying that a "waived" issue is the result of an "intentional choice not to assert [a] right," while a "forfeited" issue is the result of an accidental, negligent, or inadvertent "failure to assert a right"; and noting, "While forfeited issues are reviewable on appeal for plain error, a waived issue is unreviewable because a valid waiver leaves no error to correct and extinguishes all appellate review of the issue."); *see also People v. Abeyta,* 923 P.2d 318, 321 (Colo.App.1996)(defendant's withdrawal of claims from· court's consideration resulted in abandonment or waiver of claims).

■ Further, where, as here, the error is not of constitutional dimension, reversal would not be warranted unless the error substantially influenced the verdict or affected the fairness of the trial proceedings. *See Masters v. People,* 58 P.3d 979, 1002–03 (Colo.2002)(evaluating the effect of inadmissible evidence of bad character). The test is whether there is a reasonable probability

that the error contributed to the defendant's conviction. *Salcedo v. People,* 999 P.2d 833, 841 (Colo.2000).

Here, we find no such probability. Although the inadmissible evidence had the potential to influence the jury to convict defendant based on extra-evidentiary considerations, this result was not reasonably likely. In a subsequent question, the prosecution explicitly listed the three boys who testified in this case as the ones alleging sexual abuse by defendant; the prosecution's case against defendant was strong; and no reference to any other possible victims was made throughout the rest of the trial.

In light of these considerations, we conclude with fair assurance that the one-time use of the adjective "many" did not substantially influence the verdict or impair the fairness of the trial. *See Masters v. People, supra,* 58 P.3d at 1003–04 (erroneous admission of drawings and writings revealing defendant's violent and prejudiced nature harmless, in light of the lack of emphasis given to them by the prosecution, the existence of other admissible evidence reflecting such nature, and the substantial evidence of defendant's guilt).

Accordingly, defendant is not entitled to a new trial.

In reaching this conclusion, we reject defendant's reliance on *Lehman v. State,* 777 N.E.2d 69, 73 (Ind.Ct.App.2002), and *Reed v. State,* 991 S.W.2d 354, 365 (Tex.App.1999). In *Reed,* the court set forth what we perceive to be the overriding principle of both cases, namely, that "[i]n a case alleging a *single* aggravated sexual assault against *one* child, a reference to other possible victims of the appellant [is] extremely prejudicial." *Reed, supra,* 991 S.W.2d at 364 (emphasis added). The present case is distinguishable from both *Lehman* and *Reed* by the fact that numerous sexual acts were alleged to have been committed against two named victims and a third student as well. Hence, the potential for prejudice was not as great here as it was in *Reed* and *Lehman.*

## II. Vouching for Witness Credibility

■ Defendant also contends that reversal is required because the prosecutor and the

detective who interrogated him impermissibly and repeatedly vouched for the credibility of the victims. Again, we disagree.

██ Except as provided in CRE 608(a), a witness may not offer an opinion that a child was telling the truth on the specific occasion when the child reported having been sexually assaulted by the accused. *See People v. Eppens,* 979 P.2d 14, 17 (Colo.1999); *People v. Gaffney,* 769 P.2d 1081, 1086 (Colo.1989); *see also People v. Gallegos,* 644 P.2d 920, 927 (Colo.1982)("It is clearly improper to admit an investigating officer's testimony attesting to the accuracy or credibility of witness statements").

██ Nor may a prosecutor express a personal opinion on the credibility of witnesses. *Wilson v. People,* 743 P.2d 415, 418 (Colo. 1987).

The reason for these rules is that a witness's or prosecutor's personal opinion on the credibility of witnesses intrudes upon the province of the jury to make credibility determinations. *See Wilson v. People, supra* (prosecutorial comment); *People v. Koon,* 713 P.2d 410, 412 (Colo.App.1985)(opinion of witness); *see also People v. Gaffney, supra,* 769 P.2d at 1087 (quoting *State v. Moran,* 151 Ariz. 378, 728 P.2d 248, 253 (1986): "expert testimony on the question of who[m] to believe is nothing more than advice to jurors on how to decide the case").

In his brief, defendant points to five instances during the interrogating detective's testimony where either the prosecutor or the detective alluded to the credibility of the victims' out-of-court accusations. The allusions to which defendant refers, however, were used not to comment on the truthfulness of the victims to the jury, but to describe part of the detective's technique employed in interrogating defendant. As described by the detective, the technique utilizes accusatory statements to produce emotional and physical reactions in a defendant and possibly "crack" the defendant into a confession. As part of that technique, the detective would purposefully and repeatedly state his belief that the accusations were credible. The detective admitted that the technique "encourages" the use of

"untruths" to help get a defendant to talk and that he used false statements during defendant's interrogation.

Defendant did not object to any of the five instances of which he now complains on appeal. Consequently, our review is for plain error, and we perceive none. *See People v. Eppens, supra,* 979 P.2d at 17.

██ Initially, we conclude that evidence referencing victim credibility only to describe a device to interrogate a suspect and to explain the context in which a suspect's statements are made is admissible. *See State v. Palmes,* 964 S.W.2d 241, 243–44 (Mo.Ct.App.1998)(interrogating officer's statements about defendant's credibility admissible because they were part of give-and-take of interrogation); *see also Dubria v. Smith,* 224 F.3d 995, 1001–02 (9th Cir.2000)(interrogating officer's statements about defendant's credibility as part of pretrial interview admissible, with cautionary instruction, to give context to defendant's answers); *State v. Demery,* 144 Wash.2d 753, 30 P.3d 1278, 1283 (2001)(interrogating officer's statements about defendant's credibility admissible, with limiting instruction, to give context for the defendant's responses).

We recognize that some cases from other jurisdictions hold otherwise. *See State v. Elnicki,* 279 Kan. 47, 105 P.3d 1222, 1229 (2005); *Commonwealth v. Kitchen,* 730 A.2d 513, 521–22 (Penn.Super.Ct.1999); *State v. Jones,* 117 Wash.App. 89, 68 P.3d 1153, 1155 (2003). Although ultimately not persuaded by these authorities, we are nonetheless cognizant of the possibility that a jury could misinterpret the import of this type of evidence. Adverting only minimally to the subject of victim credibility and using a limiting instruction of a type suggested in *Dubria v. Smith, supra,* or *State v. Demery, supra,* would alleviate any concern for potential unfair prejudice.

Here, applying the plain error standard of review, we conclude that neither the lack of a limiting instruction nor the number of times the prosecution or the detective adverted to the subject created a danger of obvious or grave error. Because every reference to the subject was prefaced in terms not of what

the prosecutor or the detective believed, but of what the detective told defendant during the interrogation, the context was clear to the jury. Further, all three boys testified and were subjected to extended cross-examination at trial. Thus, the jury had an ample opportunity to judge the credibility of these witnesses for itself, independent of the detective's statements. Also, the prosecution did not allude to or otherwise make use of the detective's credibility statements during the remainder of the trial.

Under these circumstances, we conclude that any error in admitting the detective's testimony without a limiting instruction was not plain error. *Cf. People v. Eppens, supra,* 979 P.2d at 18–19 (introduction of inadmissible vouching evidence not plain error where victim herself testified and was subjected to cross-examination, social worker not received as an expert, and prosecution did not rely on statements at any other point); *People v. Hall,* 107 P.3d 1073, 1079 (Colo.App. 2004)(same).

Accordingly, defendant is not entitled to a new trial on this ground.

### III.  Cumulative Error

We reject defendant's contention that the cumulative effect of errors deprived him of his right to due process and a trial by an impartial jury. *See People v. Jenkins,* 83 P.3d 1122, 1130 (Colo.App.2003).

### IV.  Sentencing

Last, defendant contends that the trial court erred in imposing lengthy sentences based largely upon his repeated assertions of innocence. We disagree.

The trial court sentenced defendant to lengthy, consecutive terms based on findings that (1) the evidence of defendant's guilt was overwhelming; (2) defendant had "preyed upon vulnerable boys" and betrayed their trust "in the most egregious way he could, both [sic] as a father figure, as a teacher, and as a mentor"; (3) defendant's actions had been devastating to the boys, who were now young men; (4) defendant's statement in the presentence report, namely that he was confused about why the victims had accused him,

was "offensive" to the court; (5) defendant could not be rehabilitated because "he has never accepted responsibility, nor shows any remorse or victim empathy"; and (6) he was not someone who could be managed in the community without presenting a danger to the children in the community.

On appeal, defendant asserts that, in considering his failure to accept responsibility or show remorse or empathy for the victims, the trial court improperly penalized him for exercising his Fifth Amendment privilege against self-incrimination. We are unpersuaded.

In exercising its sentencing discretion, a trial court must consider a number of factors, including the rehabilitative potential of the offender. *See People v. Vensor,* 116 P.3d 1240, 1243–44, 2005 WL 170753 (Colo.App. No. 03CA1983, Jan. 27, 2005). An offender's lack of remorse and failure to accept responsibility are relevant to the issue of rehabilitative potential. *See People v. McAfee,* 104 P.3d 226, 231 (Colo.App. 2004)(lack of remorse); *People v. Gagnon,* 997 P.2d 1278, 1284 (Colo.App.1999)(failure to accept responsibility).

In *People v. Young,* 987 P.2d 889, 894–95 (Colo.App.1999), a division of this court held that "if a defendant maintains his innocence and invokes his right against self-incrimination both at trial and at sentencing, a trial court cannot constitutionally consider his lack of an expression of remorse as an aggravating circumstance." *People v. Young, supra,* 987 P.2d at 894.

In *Young,* the defendant did not testify at trial or make a statement at or for sentencing; he maintained his innocence by remaining silent throughout the course of the proceedings.

Consistent with *Young,* other appellate courts have recognized that, while a trial court may consider lack of remorse as a basis for a sentence, it may not punish a defendant merely for refusing to admit guilt. *See Bergmann v. McCaughtry,* 65 F.3d 1372, 1379 (7th Cir.1995); *People v. Coleman,* 135 Ill. App.3d 186, 89 Ill.Dec. 784, 481 N.E.2d 335, 336–37 (1985); *Jennings v. State,* 339 Md. 675, 664 A.2d 903, 908–09 (1995); *People v.*

*Wesley,* 428 Mich. 708, 411 N.W.2d 159, 161 (1987).

In this case, defendant did more than merely refuse to admit guilt. Rather, he elected to take the stand and testify at trial and to make a statement for inclusion in the presentence report. In so doing, he waived his privilege against self-incrimination, *see People v. Williams,* 100 P.3d 565, 566 (Colo.App.2004) (testifying at trial); *City & County of Denver v. Powell,* 969 P.2d 776, 779 (Colo.App.1998)(voluntarily answering questions of official), and subjected his credibility to evaluation like that of any other witness. *See also People v. Dore,* 997 P.2d 1214, 1219 (Colo.App.1999).

In *United States v. Dunnigan,* 507 U.S. 87, 97, 113 S.Ct. 1111, 1118, 122 L.Ed.2d 445 (1993), the United States Supreme Court stated: "It is rational for a sentencing authority to conclude that a defendant who commits a crime and then perjures [him]self in an unlawful attempt to avoid responsibility is more threatening to society and less deserving of leniency than a defendant who does not so defy the trial process." *See United States v. Grayson,* 438 U.S. 41, 54–55, 98 S.Ct. 2610, 2617–18, 57 L.Ed.2d 582 (1978)(rejecting argument that sentencing court could not, consistent with due process, take into account that defendant had testified falsely at trial); *People v. Wilson,* 43 Colo. App. 68, 71, 599 P.2d 970, 972 (1979)("a sentencing court may consider a defendant's false testimony as probative of his rehabilitative potential").

Here, the trial court's remarks about defendant's lack of remorse and empathy for the victims and failure to take responsibility must be viewed in the context of its other findings. Given that the court also found that defendant's guilt had been established by overwhelming evidence, we construe the court's action here as based not on a mere refusal to admit guilt, but on an assessment of defendant's credibility and the permissible inferences drawn therefrom. *See Davis v. State,* 635 P.2d 481, 487 (Alaska Ct.App. 1981)(court could consider "its belief that [defendant] had falsely testified in his own behalf and, further, that he had refused to accept responsibility or accountability for his conduct at the time of sentencing"), *disapproved of on other grounds in Velez v. State,* 762 P.2d 1297 (Alaska Ct.App.1988); *People v. Barger,* 251 Ill.App.3d 448, 191 Ill.Dec. 556, 624 N.E.2d 405, 417 (1993)(trial court may rely on defendant's lack of remorse, without running afoul of defendant's constitutional rights, when convinced that defendant is lying); *State v. Garber,* 674 N.W.2d 320, 326 (S.D.2004)("There is no constitutional right to lie.... It was [defendant's] lack of candor which prejudiced him ....").

Consequently, we conclude that, under the circumstances here, the trial court did not err when, in imposing sentence, it relied on defendant's failure to accept responsibility or show remorse or victim empathy.

The judgments and sentences are affirmed.

Judge ROY and Judge KAPELKE** concur.