Cameron Chad DAVIS, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

Supreme Court Case No. 10SC460

Supreme Court of Colorado,
En Banc.

September 9, 2013

Attorneys for Petitioner: Neff Services, Inc., Lauretta A. Martin Neff, Bayfield, Colorado.

Attorneys for Respondent: John W. Suthers, Attorney General, John T. Lee, Assistant Attorney General, Jennifer A. Berman, Assistant Attorney General, Denver, Colorado.

Justice BOATRIGHT delivered the Opinion of the Court.

¶ 1 In this appeal, we consider whether law enforcement officials may testify about their perception of a witness's credibility during an investigative interview. We hold that such testimony is admissible when it is offered to provide context for the detectives' interrogation tactics and investigative decisions. The record in this case indicates that the testimony at issue was offered for that purpose, and we therefore conclude, as the court of appeals did, that the testimony at issue was properly admitted.

¶ 2 In its opinion, the court of appeals also held that opening statements can open the door to the admission of otherwise inadmissible or irrelevant evidence. We conclude that the trial court properly admitted the detectives' testimony because it was offered to provide context for the detectives' interrogation tactics and investigative decisions. Because the trial court's admissibility ruling is not only correct but also dispositive of all the testimony at issue in this case, it is unnecessary for us to reach the question of whether opening statements can open the door to otherwise inadmissible or irrelevant evidence.

¶ 3 Accordingly, we affirm the judgment of the court of appeals on the grounds that the testimony was properly admitted to provide context for the detectives' investigations.

## I. Facts and Proceedings Below

¶ 4 Cameron Davis, the petitioner, drove his girlfriend's car while a man in the passenger seat ("Smoke") shot and killed a bystander. At trial, Davis testified to this but argued that he did not know in advance that Smoke was going to shoot anyone. The prosecution, on the other hand, argued that Davis and Smoke planned the drive-by shooting earlier that day. The prosecution heavily relied on the testimony of three witnesses: Davis's girlfriend, Davis's mother, and one of Davis's friends. The focus of this appeal, however, is the testimony of, and concerning, two detectives who testified about their investigative interviews with these witnesses.[1]

¶ 5 On direct examination of one of the detectives, the prosecutor inquired about the investigative interview of Davis's girlfriend, E.W. The detective testified that the interview began conversationally, but she explained that the tone shifted and grew more confrontational as the interview progressed. The prosecutor inquired about this change:

Q: Now in the early part of that interview when it was less confrontational . . . . was [she] giving you information about the shooting?

A: Not really, no.

Q: All right, and is that one of the reasons why the interview got confrontational?

A: It did.

Q: Can you explain to the jury why it happened that way?

A: Well, I know I didn't believe and I guess I can—

At that point, defense counsel objected and argued that a witness cannot comment on the credibility of another witness. The trial court overruled the objection, finding that

---

1. In addition to the testimony discussed in this section, Davis objected to another portion of testimony where, during redirect examination by the prosecution, one of the detectives commented on Davis's credibility. The court of appeals affirmed the admission of this testimony on grounds that defense counsel opened the door to it during cross-examination. Because of the court of appeals' holding, that portion of challenged testimony is not encompassed within the granted certiorari questions, and we do not consider it here.

the detective used her assessment of E.W.'s credibility to determine how to proceed in the interview: "with the understanding that that's the context in which this officer is making that particular statement and not a general comment on the credibility of the witness . . . I'm going to overrule the objection." The trial court also instructed the jury, "[i]t is for [you] to determine whether or not the testimony [the witness] presents during the course of this trial is credible."

¶ 6 The detective went on to explain why the tone escalated: "At the beginning of the interview I didn't feel that [E.W.] was telling us everything that she knew, things just didn't make sense. So as the interview proceeded, we did get more confrontational with her." She then explained that law enforcement officials, as an interrogation tactic, often accuse an interviewee of involvement in the crime. The detective testified that after she used this technique with E.W., who the detective initially believed "was not being forthcoming with what she knew," E.W. provided information linking Davis to the shooting:

Q: Is that one of the techniques you used with [E.W.] as well?

A: It is.

Q: To be candid, in your opinion at the time was it your assessment that she did perhaps have some level of involvement?

A: Yes.

Q: All right, and so after—did you let it be known to [E.W.] that you asked whether she was telling the truth?

A: Yes.

Q: And did you let [E.W.] know that you still suspected her of having greater involvement in the crime than she was admitting to?

A: Yes.

Q: All right, and is that sort of at the point where the interview got more confrontational?

A: Yes.

Q: And after the interview got more confrontational, did the information that [E.W.] gave you change?

A: Yes.

Q: And did she give you some information that you were able to subsequently use in the investigation of this case?

A: Yes, she did.

■ ¶ 7 The prosecution also called Davis's mother, Ms. Monroe, as a witness. She testified that she could not remember her interview with one of the detectives. On the stand, she responded to nearly all of the prosecutor's questions with the statement, "I don't know." Because of this testimony, the prosecutor showed the jury several video clips of the detective's interview with Ms. Monroe.[2] During her examination, the prosecution introduced a segment that contained an exchange in which the detective became confrontational with Ms. Monroe:

Q: The conversation we had earlier, we're going to revise that a little bit, okay, we're going to start over, okay. This time we're going to deal with the truth, fair enough?

A: The truth?

Q: Yeah. . . . Now I want you to realize something here. Fun and games are over.

A: I don't know what you are talking about.

Q: Yeah, you do.

Defense counsel objected and argued that the detective's statements were inadmissible under CRE 608 because they constituted a comment on witness veracity. The trial court overruled the objection, and the prosecutor showed the remainder of the video to the jury. After the video, Ms. Monroe continued to respond to the prosecutor's questions in the same manner as before, answer-

---

**2.** Section 16–10–201, C.R.S. (2012), permits the introduction at trial of a witness's previous inconsistent statement, not only for the purpose of impeachment but also for the purpose of establishing a fact. A witness's actual or feigned memory loss is tantamount to denial. *See People v. Pepper*, 193 Colo. 505, 508, 568 P.2d 446, 448 (1977) (holding that a witness's prior inconsis- tent statements are admissible even in the event of that witness's actual or feigned memory loss); *see also People v. Baca*, 633 P.2d 528, 529 (Colo. App.1981) ("For the purpose of introducing the prior testimony of a witness, the witness' [sic] inability to remember a statement is tantamount to a denial that he made the statement.").

ing, "I don't know," or "I don't remember." Because of this, the prosecution called the interviewing detective as a witness to impeach Ms. Monroe's testimony.

¶ 8 The detective took the stand and testified that "[p]ortions of [Ms. Monroe's] responses were considerably different in the second portion of the interview." He explained that he became confrontational with Ms. Monroe "because she obviously hadn't been entirely truthful ... previously." Twice during this line of questioning, defense counsel again objected under CRE 608. The trial court overruled both objections and stated, "[T]he ruling I previously made on this particular issue will stand here, as well."

¶ 9 Later in the trial, the prosecutor recalled one of the detectives to discuss her interview of Davis's friend, W.C.[3] The detective testified that she spoke with only one other person to corroborate W.C.' s statements after the interview. She explained that she did this because "[she] was comfortable with the detail [W.C.] provided." Again, defense counsel objected that the detective's statement constituted a credibility opinion in violation of CRE 608, and the trial court responded, "Objection's overruled, based upon my prior ruling on these issues." The detective continued, "Like I said, [W.C.] stated details that were true as to what we had already investigated and found out. So I was comfortable with what he had told me."

¶ 10 After a week-long trial with testimony from over twenty witnesses, the jury convicted Davis of the lesser-included offense of reckless manslaughter as well as accessory to a crime and reckless endangerment. Davis appealed.

¶ 11 The court of appeals affirmed the trial court's admissibility rulings. The trial court reasoned that the detectives' testimony regarding the investigative interviews was ad-

missible because it was not offered as a credibility opinion but instead was offered to explain the detectives' interrogation tactics and investigative decisions. *People v. Davis*, 312 P.3d 193, 194–95, No. 07CA1320, 2010 WL 2105878 (Colo.App. May 27, 2010) (selected for official publication). The court of appeals agreed and determined that "evidence referencing [witness] credibility only to describe a device to interrogate a suspect and to explain the context in which a suspect's statements are made is admissible." *Id.* at 195, (citing *People v. Lopez*, 129 P.3d 1061, 1066 (Colo.App.2005)). The court of appeals further concluded, as a matter of first impression, that the detectives' testimony regarding the investigative interviews was admissible because defense counsel's opening statement had opened the door to otherwise inadmissible or irrelevant evidence. *Id.* at 195.

¶ 12 Although we granted certiorari to examine two questions, our decision on the first question of whether a detective, when testifying about interrogating a witness, may comment on his or her assessment of the witness's credibility or truthfulness, renders the second—whether a party may open the door to the admission of otherwise inadmissible evidence through its opening statement— moot.[4] Because we conclude that the detectives' testimony in this case was properly admitted to provide context for the detectives' interrogation tactics and investigative decisions, it is unnecessary for us to reach the question of whether opening statements can open the door to otherwise inadmissible or irrelevant evidence.

## II.   Standard of Review

■■■ ¶ 13 A trial court enjoys broad latitude to determine the admissibility of evi-

3.   W.C. testified at trial, but he refused to answer the prosecutor's questions, claiming that he could not remember what he had told police investigators. Prosecutors recalled the interviewing detective to introduce W.C.' s statements for impeachment purposes.

4.   We granted certiorari to consider:
  1.   Whether the court of appeals erred in deciding, as a matter of first impression, that a

party may "open the door" to the admission of otherwise inadmissible evidence through its opening statement, even though an opening statement is not evidence.
  2.   Whether the court of appeals erred by holding that a detective, when testifying about interrogating or investigating a witness, may comment on his or her assessment of the witness's credibility or truthfulness.

dence. *Kaufman v. People*, 202 P.3d 542, 553 (Colo.2009). Hence, we grant considerable deference to the trial court's determinations and review evidentiary rulings for an abuse of discretion. *Dale v. Guar. Nat'l Ins. Co.*, 948 P.2d 545, 556 (Colo.1997). A trial court abuses its discretion if its decision is "manifestly unreasonable, arbitrary, or unfair." *Freedom Colo. Info., Inc. v. El Paso Cnty. Sheriff's Dep't*, 196 P.3d 892, 899 (Colo. 2008). Davis, through contemporaneous admissibility objections at trial, properly preserved each portion of testimony for review. Therefore, if we find an abuse of discretion, then we review for harmless error and consider whether any error, in light of the entire record of the trial, substantially influenced the verdict or impaired the fairness of the trial. *People v. Stewart*, 55 P.3d 107, 124 (Colo.2002). With this standard in mind, we turn to the applicable law.

### III. The Admissibility of Comments on Witness Credibility

■ ¶ 14 Evidentiary rules limit the admission of character evidence in most situations.[5] Under CRE 404(a), "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion." CRE 608(a), on the other hand, provides a limited exception that permits evidence of a witness's character for truthfulness or untruthfulness only after that character has been attacked:

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

■ ¶ 15 This state's case law disfavors comments by one witness about another witness's truthfulness. *See, e.g., People v. Gaff-*

ney, 769 P.2d 1081, 1085–86 (Colo.1989) (holding that the trial court erred by admitting a doctor's testimony that a child victim's description of a sexual crime was "very believable"); *Tevlin v. People*, 715 P.2d 338, 341 (Colo.1986) (holding that the trial court erred when it allowed a social worker to state that a victim was telling the truth when describing various incidents of abuse); *People v. Cook*, 197 P.3d 269, 276 (Colo.App. 2008) (holding that the trial court erred when it allowed an investigating officer to expressly state, on multiple occasions, that victims were "credible" in their accusations); *People v. Hall*, 107 P.3d 1073, 1078–79 (Colo.App. 2004) (holding that it was improper under CRE 608(a) for an investigating officer to testify that witnesses he interviewed "seemed sincere").

¶ 16 In this vein, Davis relies on *Liggett v. People* to argue that the detectives' testimony was improper. 135 P.3d 725, 727 (Colo. 2006). In *Liggett*, an attorney repeatedly asked a witness about another witness's truthfulness. *Id.* The attorney inquired, "[s]o when [the witness] sat up here and said that, he was lying?" and also asked, "[s]o what you're saying is [the witness] was lying?" *Id.* at 728. This court determined such questions to be inadmissible because they offer no probative value; they ignore numerous alternative explanations for evidentiary discrepancies that do not involve lying; they infringe upon the province of the jury; and they are argumentative. *Id.* We concluded that these concerns, in *Liggett*, outweighed the probative value of the testimony. *Id.* at 731. Hence, we categorically prohibited "were they lying?" type questions "posed to witnesses regarding the veracity of other witnesses." *Id.* at 731–32.

¶ 17 *Liggett*, however, is inapplicable to the challenged testimony in this case. Here, the prosecutor asked why a witness took a particular course of action. The prosecutor did not "[ask] a witness to comment on the veracity of another witness" and did not offer the testimony for the purpose of commenting

---

5. Davis did not appeal whether the detectives' testimony was relevant. Accordingly, this opinion does not address relevance and admissibility under CRE 402 and 403. Instead, it concerns

only the portion of the trial court's ruling that pertains to whether the testimony constituted a credibility opinion.

on witness credibility. *Id.* at 727. The challenged testimony in this case is wholly different from the "were they lying?" type questions prohibited in *Liggett.* *Id.* Because this court's precedent does not address the type of testimony at issue in this case, we consider a court of appeals opinion that is directly on point.

¶ 18 In *People v. Lopez,* 129 P.3d 1061, 1066 (Colo.App.2005), the court of appeals held that it is acceptable for detectives to reference witness credibility within the narrow context of describing an investigative interview. There, the defendant was convicted of multiple counts of sexual assault, and he appealed a portion of a detective's testimony that alluded to the victims' credibility. *Id.* at 1066. The court of appeals held that the statements, which it interpreted not as comments on the victims' credibility but as explanations of the detective's interrogation techniques, were admissible. *Id.* The court noted that the victims testified and were subject to cross-examination, which provided the jury "ample opportunity to judge the credibility of [the victims] for itself, independent of the detective's statements." *Id.* at 1067. That court also stressed the importance of "[a]dverting only minimally to the subject of victim credibility and using a limiting instruction … [to] alleviate any concern for potential unfair prejudice." *Id.* at 1066. Thus, it held that "evidence referencing victim credibility only to describe a device to interrogate a suspect and to explain the context in which a suspect's statements are made is admissible" as part of the give-and-take of an interrogation. *Id.*

■■■ ¶ 19 We find this analysis persuasive. We hold that a detective may testify about his or her assessments of interviewee credibility when that testimony is offered to provide context for the detective's interrogation tactics and investigative decisions. The admissibility of any testimony hinges on the particular circumstances under which it is elicited and offered.

### IV. Admissibility in This Case

¶ 20 In this case, the prosecutor elicited the challenged testimony with open-ended questions concerning the detectives' investigative interviews. The prosecutor did not use inflammatory or prejudicial words, such as "lie." His open-ended questions did not aim to elicit comments on the veracity of other witnesses' testimony but instead aimed to draw out the circumstances that surrounded the detectives' investigative tactics and decisions. The detectives' answers referred not to the credibility of the witnesses' in-court testimony, which determination undoubtedly falls within the jury's purview, but rather to the detectives' assessments of the interviewees' credibility during the interviews conducted prior to trial.

■■■ ¶ 21 Additionally, the detectives' testimony served an alternative purpose and yielded probative information. The detectives offered this testimony to explain their investigative decisions. It provided context for the jury to better understand the detectives' witness interviews and the scope of their investigation. Finally, all three witnesses—E.W., Ms. Monroe, and W.C.—testified and were subject to cross-examination, which provided the jury "ample opportunity to judge the credibility of [the] witnesses for itself, independent of the [detectives'] statements." *Lopez,* 129 P.3d at 1067. The trial court provided a limiting instruction following the detective's testimony about E.W. but did not provide one as to the other portions of challenged testimony. Although it would have been better practice to provide a contemporaneous limiting instruction with each challenged portion of testimony, trial courts possess the "discretion to give or not give such a cautionary instruction when it is not requested." *People v. Gladney,* 194 Colo. 68, 71–72, 570 P.2d 231, 233 (1977); *see also Lopez,* 129 P.3d at 1066 (limiting instructions helpful to "alleviate any concern for potential unfair prejudice"). Unless a limiting instruction is either required by statute or requested by a party, a trial court has no duty to provide one sua sponte.[6] *See Polster v.*

6. The court recognizes that for strategic purposes, counsel may choose not to request a limiting instruction in some circumstances.

*Griff's of Am., Inc.,* 184 Colo. 418, 422, 520 P.2d 745, 747 (1974) (no duty to give a limiting instruction when not requested); *see also People v. Griffin,* 224 P.3d 292, 298–99 (Colo. App.2009) (discussing various supreme court cases holding that absent a special statutory requirement, trial courts have no duty to give limiting instructions sua sponte). Hence, the lack of a limiting instruction in this case— when not requested by counsel and not required by statute—does not constitute reversible error. *Gladney,* 194 Colo. at 71–72, 570 P.2d at 233. The trial court's failure to give a limiting instruction did not undermine the fundamental fairness of the trial and did not cast serious doubt on the reliability of the judgment of conviction.

¶ 22 For these reasons, we conclude that the detectives' testimony did not constitute an improper credibility opinion under these circumstances. The trial court properly admitted the testimony because it was offered to provide context for the detectives' interrogation tactics and investigative decisions; therefore, the trial court did not abuse its discretion. The trial court's ruling is not only correct but also dispositive of all the testimony at issue in this case. As a result, we do not reach the question of whether opening statements can open the door to otherwise inadmissible or irrelevant evidence.

## V. Conclusion

¶ 23 For the foregoing reasons, we affirm the judgment of the court of appeals.

Chief Justice BENDER concurs in the judgment, and Justice MÁRQUEZ joins in the concurrence in the judgment.

Chief Justice BENDER, concurring in the judgment.

¶ 24 The majority approves the admission of opinion testimony from investigating detectives that they "didn't believe" one witness, felt another "obviously hadn't been entirely truthful," and that another's information was "true." To do so, the majority fashions an exception to CRE 608 for opinion testimony offered for the limited purpose of providing "context for the detec-

tive's interrogation tactics and investigative decisions." Maj. op. 19. In my view, the majority's exception conflicts with precedent categorically prohibiting such testimony and the clear dictates of CRE 608.

¶ 25 I would hold that the trial court erred by permitting admission of the opinion testimony commenting on the witnesses' veracity in this case. Finding error, I would nevertheless conclude that admission of the testimony was harmless and would affirm the defendant's convictions. Although the majority finds it unnecessary to reach this issue, because I find error, I address whether an opening statement can open the door to otherwise inadmissible evidence. And I would hold that opening statements cannot open the door to otherwise inadmissible evidence, and I would vacate that portion of the court of appeals' opinion holding otherwise.

¶ 26 Hence, I concur in the judgment.

### I.

¶ 27 A witness may not be asked to opine on the veracity of another witness. *Liggett v. People,* 135 P.3d 725, 732 (Colo.2006). Testimony about another witness's veracity invades the province of the jury, lacks probative value, distorts the government's burden of proof, creates a "no win" situation, and is argumentative. *Id.* at 731–32. *Liggett's* rule prohibiting admission of such testimony is categorical, affording no room for any case-by-case exception. *Id.* at 732.

¶ 28 The majority fashions such an exception, distinguishing *Liggett* because the prosecution did not ask "were they lying?" but instead asked questions concerning the detectives' investigative decisions. The majority reads *Liggett* too narrowly. The concerns underlying *Liggett* do not disappear because testimony is offered for the limited purpose of explaining the context of a detective's "interrogation tactics and investigative decisions." Nor am I persuaded that the prosecution's questions, rather than a witness's responses, are the focal point of the inquiry. *Liggett* offers no principled basis on which to distinguish "were they lying" questions from "they were lying" statements—both are "categorically improper." *See id.* at 732. In

either case, the jury learns a witness's opinion about the veracity of another witness on a particular occasion, and "clothing the opinion in the garb of an interviewing technique does not help." *State v. Elnicki,* 279 Kan. 47, 105 P.3d 1222, 1229 (2005) (quoting *State v. Jones,* 117 Wash.App. 89, 68 P.3d 1153, 1155 (2003)).

¶ 29 More fundamentally, the majority's holding, though framed as an exception to CRE 608, rewrites that rule. CRE 608 controls the admissibility of character evidence offered to support or attack the credibility of a witness. By its terms, CRE 608 does not permit admission of a witness's opinion about whether another witness was telling the truth on a particular occasion—such as the interrogations at issue here. CRE 608(a); *Liggett,* 135 P.3d at 731. Until today, our cases have uniformly held as much. *See, e.g., People v. Eppens,* 979 P.2d 14, 18 (Colo.1999) (holding that a social worker's testimony that a child was "sincere" constituted impermissible character testimony); *People v. Gaffney,* 769 P.2d 1081, 1088 (Colo.1989) (holding that CRE 608(a) prohibited admission of a pediatrician's statement that a child's medical history was "very believable"). Further, CRE 608 does not permit testimony bolstering a witness's character for truthfulness before that character has been attacked, nor does it permit testimony about specific instances of conduct on direct examination. But the majority's holding appears to permit both so long as the testimony provides context for the interrogation tactics and investigative decisions of law enforcement officials. Additionally, such testimony appears admissible without any of the rule's foundational safeguards—such as the requirement that the testifying witness actually know the witness to be impeached or bolstered. *Honey v. People,* 713 P.2d 1300, 1302 (Colo.1986).

¶ 30 Finally, the exception fashioned by the majority is unnecessary. Assuming such testimony is relevant, there are other ways for a law enforcement official to provide "context for the detective's interrogation tactics and investigative decisions" without permitting admission of opinion testimony about a witness's veracity on a particular occasion. The prosecution could ask general questions about how the interrogation or investigation progressed, or, even more generally, questions about how police routinely conduct interrogations and investigations. *See Elnicki,* 105 P.3d at 1229. Here, the prosecution asked the detective why an interrogation became confrontational, and she testified that "being more confrontational" is an interrogation tactic designed to encourage witnesses to divulge information and that she regularly "accuse[s] the interviewee" of being involved in a crime to garner information, which escalated an interrogation here. Neither reason required the detective to opine on a witness's veracity, yet both provide context for her interrogation tactics and investigative decisions.

¶ 31 Finding error, I would address whether permitting admission of the detectives' testimony was harmless. Having reviewed the record, and consistent with our precedent, I am persuaded that it was. As the majority makes clear, although the detectives opined about the veracity of three witnesses, all three testified at trial and were subject to vigorous cross-examination. The jury was free to assess their credibility on its own. *See Eppens,* 979 P.2d at 18 (holding that a social worker's comment that a child appeared "sincere," though error, was harmless in part because the child was subject to cross-examination and the jury had a "full opportunity to judge her credibility in light of her demeanor"). Although the trial court should have stricken the improper testimony, it did provide a limiting instruction in one instance, and it also instructed the jury on several occasions, in accordance with Colorado's model jury instructions, of the jury's responsibility to assess the credibility of witnesses on its own.

## II.

¶ 32 Finding the testimony inadmissible, I address whether opening statements can open the door to otherwise inadmissible evidence. In my view, the answer is clear— they cannot. Hence, I would vacate that portion of the court of appeals' opinion holding otherwise.

¶ 33 Opening statements are not evidence, and they do not constrain later argument or

introduction of evidence. *See People v. Bergerud,* 223 P.3d 686, 700 (Colo.2010). The trial court's introductory instructions to the jury are explicit: "Opening statements are not evidence. Their purpose is only to help you understand what the evidence will be." CJI–Crim. 1:03 (1983). If, in an opening statement, counsel makes an improper remark, then the remedy lies in a curative instruction or, in some cases, a mistrial. *See State v. Anastasia,* 356 N.J.Super. 534, 813 A.2d 601, 606 (App.Div.2003). If counsel promises to present certain evidence during opening statements and does not, then opposing counsel may attack that failure during closing. *See State v. Chum,* 54 A.3d 455, 461 (R.I.2012). What is inappropriate, however, is permitting opposing counsel to present irrelevant or otherwise inadmissible evidence on the basis that an opening statement, which carries no evidentiary weight, opened the door to its admission.[1]

¶ 34 Hence, I concur in the judgment.

I am authorized to state that Justice MÁRQUEZ joins in the concurrence in the judgment.

1. As the People and the court of appeals point out, however, there are cases from other jurisdictions holding otherwise. *See, e.g., Flanders v. State,* 279 Ga. 35, 609 S.E.2d 346, 351 (2005) (concluding that defense counsel's remark during opening statements opened the door to testimony but concluding alternatively that the testimony was cumulative of other testimony admitted without objection). Contrary to such cases, my view is that the remedy to an improper opening statement lies in a curative instruction or a mistrial.