Opinion by JUDGE ASHBY
*513 ¶ 1 Defendant, Patrick Sean Bridges, appeals the judgment of conviction entered on jury verdicts finding him guilty of sexual assault on a child, among other charges. We reverse the judgment and remand for a new trial.
I. Background
¶ 2 S.B., Bridges' daughter, alleged that he had sexually abused her. The People charged Bridges with three counts of sexual assault on a child-pattern of abuse, three counts of aggravated incest, and one count of enticement of a child.
¶ 3 At trial, there was no physical evidence that Bridges had sexually abused S.B., and the only direct evidence of the abuse was S.B.'s trial testimony and the video of her forensic interview in which she described the abuse. S.B. both testified at trial and stated in her interview that A.Q., her stepsister, had witnessed the abuse and had herself been abused by Bridges.
¶ 4 In her own forensic interview that was admitted at trial, A.Q. stated that S.B. told her several times about being abused by Bridges. However, at trial, A.Q. testified that she had not witnessed any abuse of S.B., S.B. never told her about being abused by Bridges, and she had not been abused by Bridges herself.
¶ 5 The forensic interviewer who conducted both interviews also testified at trial after being qualified and accepted as an expert in "forensic interviewing including the part and parcel of the forensic interviewing looking for coaching, deception, those types of things." In response to questions from the jury, he testified, over Bridges' objection, that he concluded that S.B. and A.Q. had not been coached before their respective interviews.
¶ 6 The jury found Bridges guilty of one count of sexual assault on a child (no pattern), one count of aggravated incest, and one count of enticement of a child. The trial court convicted and sentenced him accordingly.
¶ 7 Bridges appeals, first arguing that the court erred by allowing the forensic interviewer to testify that S.B. and A.Q. had not been coached in their respective forensic interviews. Because we agree that admitting this testimony was reversible error, we do not address any additional arguments on appeal.
II. Standard of Review
¶ 8 We review a court's evidentiary rulings for an abuse of discretion. See Davis v. People, 2013 CO 57, ¶ 13, 310 P.3d 58. If we determine that the court abused its discretion, we must then decide whether the aggrieved party is entitled to relief. The proper standard of review for this decision turns on whether the court's error implicated that party's constitutional rights, and whether the error was preserved.
¶ 9 Here, Bridges preserved the error by a contemporaneous objection. But, the alleged error was not constitutional in nature. See id. (treating preserved alleged violations of CRE 608(a) as nonconstitutional).
¶ 10 Preserved, nonconstitutional error requires reversal unless the error was harmless. See id. at ¶ 13 ; People v. Gaffney, 769 P.2d 1081, 1088 (Colo.1989) ; People v. Pena-Rodriguez, 2012 COA 193, ¶ 64, 2012 WL 5457362 ; see also Crim. P. 52(a). Harmless error is any error that does not substantially influence the verdict or affect the fairness of the proceedings. See Tevlin v. People, 715 P.2d 338, 342 (Colo.1986). Applying this standard, we must vacate Bridges' convictions unless we can say, based on the entire record, that the error did not substantially influence the verdict or impair the fairness of the trial. See Davis, ¶ 13. We are unable to do so.
III. Improper Vouching for Witness Credibility
¶ 11 "In Colorado, neither lay nor expert witnesses may give opinion testimony that *514 another witness was telling the truth on a specific occasion." People v. Wittrein, 221 P.3d 1076, 1081 (Colo.2009) (citing CRE 608(a) ). However, when a witness's character for truthfulness has been attacked, the court may admit testimony about that witness's general character for truthfulness. See CRE 608(a) ; Gaffney, 769 P.2d at 1085-86. The jury is allowed to consider evidence about a witness's general character for truthfulness but not evidence that a witness was telling the truth on a specific occasion because it is solely the jury's responsibility to determine whether a particular witness's testimony or statement is truthful. See People v. Lopez, 129 P.3d 1061, 1066 (Colo.App.2005) ("a witness's or prosecutor's personal opinion on the credibility of witnesses intrudes upon the province of the jury to make credibility determinations").
¶ 12 Here, video of portions of S.B.'s and A.Q.'s respective forensic interviews were admitted into evidence and played for the jury at trial. The forensic interviewer testified as an expert witness that coaching includes telling a child to say things that are untrue and encouraging a child to withhold information. He further testified generally about how to determine during a forensic interview whether a child has been coached, and about the interview techniques he uses to elicit the child's own version of events in spite of any coaching the child may have received.
¶ 13 At the conclusion of the forensic interviewer's testimony, the jury submitted several questions to the court. Over Bridges' objection, the forensic interviewer answered the following jury questions:
The court: Did you conclude after your interview with [S.B.] that she had been coached prior to the interview?
[Forensic interviewer]: No, I did not.
The court: Next question from the jury. Did you find either [A.Q.] or [S.B.] to come across as coached or guided?
[Forensic interviewer]: No.
¶ 14 Although the court ruled that this testimony did not comment on S.B.'s or A.Q.'s credibility, it failed to articulate, either for the record or the jury, on what grounds it was properly admitted. We can see none.
¶ 15 Testimony about the credibility of another witness is admissible if it explains or provides context for why the interviewer conducted an interview in a particular manner. See Davis, ¶ 19 ("We hold that a detective may testify about his or her assessments of interviewee credibility when that testimony is offered to provide context for the detective's interrogation tactics and investigative decisions."). An interviewer may also help the jury make its own credibility determination by describing general indicia of coaching or untruthfulness in interviewees. See People v. Rogers, 800 P.2d 1327, 1330 (Colo.App.1990) (detective's testimony about "the range of responses and demeanor demonstrated by child sexual assault victims" was admissible). But an interviewer may not usurp the jury's role of assessing the credibility of a particular witness's statement by offering an ultimate conclusion about the statement's truthfulness. See Lopez, 129 P.3d at 1066.
¶ 16 Here, the forensic interviewer's testimony that S.B. and A.Q. had not been coached constituted conclusions about their truthfulness in their respective interviews. This was impermissible opinion testimony about the credibility of another witness's statement. The court erred by admitting it over Bridges' objection. See Davis, ¶ 19 ; People v. Eppens, 979 P.2d 14, 17-18 (Colo.1999) (admission of social worker's testimony that she felt the child sexual abuse victim "was sincere" in her forensic interview was error); Gaffney, 769 P.2d at 1088 (doctor's testimony that medical history given by child victim was "very believable" went to whether child victim was truthful on a particular occasion, not her general character for truthfulness); People v. Oliver, 745 P.2d 222, 225 (Colo.1987) (social worker's and investigator's testimony that, based on their experience and interviews of the victims, they personally believed the victims was inadmissible); see also State v. Adams, 5 P.3d 642, 648 (Utah 2000) (detective's testimony that he did not believe witness was coached violated rules of evidence because it vouched for truthfulness of witness on a particular occasion); Kindred v. State, 973 N.E.2d 1245, 1258 (Ind.Ct.App.2012) ("[G]eneral testimony about the signs *515 of coaching, as well as the presence or absence of those signs in the child victim at issue, preserves the ultimate credibility determination for the jury and therefore does not constitute vouching. By contrast, where a witness opines as to whether the child victim was coached ... the witness invades the province of the jury and vouches for the child.").
¶ 17 We next conclude that this error was not constitutional in nature. See Davis, ¶ 13 (treating preserved alleged violations of CRE 608(a) as non-constitutional and reviewing under general harmless error standard). Because this error was not constitutional and Bridges preserved it with a contemporaneous objection, we apply the general harmless error standard and must vacate Bridges' convictions unless we can say, based on the entire record, that the error did not substantially influence the verdict or impair the fairness of the trial. Id. (setting out general harmless error standard). We are unable to do so.
¶ 18 At trial, the only direct evidence supporting Bridges' convictions was S.B.'s allegation of abuse in her trial testimony and the video of her forensic interview. A. Q.'s statements in her own forensic interview supported the allegation that Bridges sexually abused S.B. On the other hand, A.Q.'s trial testimony contradicted her forensic interview statements that supported the allegation, and also challenged S.B.'s credibility. Consequently, the credibility of S.B. and A.Q., and particularly the credibility of their statements in the forensic interviews were the central issues in the case.
¶ 19 The jury's proposed questions for the forensic interviewer underscore this point. Along with the two questions that the court asked on behalf of the jury, jurors also submitted the following questions for the forensic interviewer that the court deemed improper and declined to ask:
• "What was your assessment of [S.B.]'s credibility?"
• "In your expert opinion, was [S.B.] telling the truth about being molested by her dad?"
• "Since you assess credibility through the interview, did you find [S.B.] to be forthcoming and honest (in your opinion)? How about [A.Q.]?"
¶ 20 Because the essential issue for the jury's determination was S.B.'s and A.Q.'s credibility, we are unable to say that the forensic interviewer's testimony that the two interviewees were not coached was harmless and did not substantially influence the jury's verdict. See People v. Snook, 745 P.2d 647, 649 (Colo.1987) (error of admitting expert's testimony that supported victim's credibility was not harmless because victim's credibility "was the focal issue in the case"); People v. Cook, 197 P.3d 269, 276 (Colo.App.2008) (admission of investigating officer's testimony expressing his opinion about child witness's credibility was plain error in part because "the question was asked by a juror and was obviously predicated on a concern of that juror as to ... his or her resolution of the central issue of credibility in the case"); cf. Gaffney, 769 P.2d at 1088-89 (doctor's testimony that history given by child victim that referred to defendant as the perpetrator of sexual crime was "very believable" was harmless error because the comment was made in passing, and was not "a situation in which the prosecuting attorney asked the expert witness to offer an opinion on whether a child-victim of a sexual crime was truthful on a particular occasion").
¶ 21 Moreover, the effect of this testimony was amplified because (1) the forensic interviewer was qualified as an expert in assessing coaching and deception in interviewees and (2) S.B.'s allegation that Bridges abused her was not corroborated by any other direct or physical evidence. Cf. Eppens, 979 P.2d at 18-19 (social worker's testimony that child victim was very "sincere" in interview was harmless error in part because social worker testified as lay witness and child victim's testimony in the interview was corroborated by physical findings consistent with sexual assault as well as other testimony).
IV. Conclusion
¶ 22 Because we are unable to say that the court's error in admitting the forensic interviewer's testimony was harmless, we must *516 reverse the judgment of conviction and remand for a new trial.
¶ 23 Based on this conclusion, we need not address the other issues raised by Bridges on appeal.
¶ 24 The judgment of conviction is reversed, and the case is remanded for a new trial.
JUDGE CASEBOLT and JUDGE RICHMAN concur.