484 P.3d 678
The PEOPLE of the State of Colorado, Petitioner,
v.Justine Lynn MURPHY, Respondent.
Supreme Court Case No. 19SC409 Supreme Court of Colorado.
April 12, 2021
Attorneys for Petitioner: Philip J. Weiser, Attorney General Megan C. Rasband, Assistant Attorney General Denver, Colorado
Attorneys for Respondents: Megan A. Ring, Public Defender Joseph P. Hough, Deputy Public Defender Denver, Colorado
En Banc
JUSTICE BERKENKOTTER delivered the Opinion of the Court.
¶1 In this appeal, we review the court of appeals' decision in People v. Murphy , 2019 COA 39, ––– P.3d ––––, in which the division determined that the trial court improperly admitted lay opinion testimony and, therefore, reversed Justine Lynn Murphy's convictions for distributing methamphetamine and contributing to the delinquency of a minor, and remanded the case for a new trial. We consider whether the trial court properly admitted as lay opinion a police officer's testimony regarding the conclusions he drew from his observations of a witness's body language.1 We conclude that the trial court did not abuse its discretion in ruling that the police officer's testimony regarding the witness's body language constituted lay opinion testimony. We further conclude that the officer did not improperly comment on the credibility of another witness. Accordingly, we conclude that the officer's testimony was properly admitted, reverse the judgment of the court of appeals, and remand the case for further proceedings consistent with this opinion.
I. Facts and Procedural History
¶2 Fifteen-year-old K.H. was sent to his school counselor after a teacher expressed concern that K.H. appeared ill. During his meeting with the counselor, K.H. explained that he had attended a concert the night before with his thirty-five-year-old stepsister, Justine Murphy, and that he used methamphetamine while "partying" with her before the concert.2 The school then contacted K.H.'s father, and K.H. was admitted to a local hospital for evaluation and recovery. Deputy Mark Johnson, the school resource officer, interviewed K.H. at the hospital while K.H.'s father was present.
¶3 During the recorded interview, Deputy Johnson asked K.H. what kind of drugs he used recently and when he last used them. K.H. admitted that he shot up methamphetamine the previous night. Deputy Johnson later transitioned to asking K.H. where he got the methamphetamine, and the following exchange occurred:
Q. You don't remember? Okay. Did you get it from [Murphy]?
A. [Non-verbal response]
Q. Yeah. Okay. Did she just give it to you or did she sell it to you?
A. She sold it to me.
¶4 When Deputy Johnson then asked how much he paid for it, K.H.'s father terminated the interview. K.H.'s father then walked into the hallway and was recorded saying to his girlfriend, Murphy's mother, "[H]e's asking about [Murphy] and he says she sold it to him, so I don't want to get her in any trouble either."
¶5 The prosecution subsequently charged Murphy with distributing a controlled substance and contributing to the delinquency of a minor.
¶6 Prior to trial, defense counsel objected to the prosecution's endorsement of Deputy Johnson as an expert in the field of "witness interviewing." Specifically, counsel objected to Deputy Johnson testifying, as he had at the preliminary hearing, about the inferences he drew from K.H.'s non-verbal response after asking, "Did you get it from [Murphy]?" The trial court overruled the objection, finding that the proffered testimony constituted lay opinion testimony because Deputy Johnson "observed [K.H.]'s body language and had a rational basis for forming an opinion as to his body language."3 The trial court further noted that the prosecution was seeking to elicit factual, rather than legal, conclusions.
¶7 When the prosecutor called K.H. to testify at trial, he changed his story and testified that he obtained the methamphetamine from a "dealer friend" at the concert and that he used it the morning before he went to school. In response to the prosecutor's questioning, he indicated that he understood the gravity of the charges against Murphy and that he would do anything to help her, but that he would not identify his dealer friend and could not explain why he waited so long to tell anyone this information. K.H. also testified, in response to questioning, that the recent change in his story was not influenced by Murphy's mother, who had described to Murphy, in a recorded jail conversation, the need to get K.H. to change his story. K.H. further testified that during the hospital interview, he didn't say anything and just shook his head "no" when Deputy Johnson asked, "Did you get it from [Murphy]?"
¶8 The prosecutor subsequently called Deputy Johnson to testify. During direct examination, the prosecutor asked Deputy Johnson about his observations and perception of K.H.'s body language during the hospital interview:
Q. [W]hat did you say, as best as you can recall and then what was his response and his body language?
A. What I asked was, was to the [e]ffect is if he got it, I asked him directly based on his—I had asked him some questions and he didn't seem like he wanted to answer them. So I asked him directly, I said, "Did you get it from [Murphy]?"
And he didn't snap his head and shake his head and say no right away. Instead he kind of looked down our way and I took that to be—
¶9 Defense counsel then renewed his prior objection, arguing that Deputy Johnson was offering expert testimony in the field of witness interviewing. Citing its earlier order, the trial court overruled the objection and noted that Deputy Johnson was offering proper lay, not expert, opinion testimony. The prosecutor then resumed the same line of questioning, focusing on what Deputy Johnson observed during the interview:
Q. Please describe for the jury one more time what you observed [K.H.] do with his body?
A. So I asked him to the effect directly, did you get it from [Murphy]? He did not deny right away. Instead, his body language changed. He looked—had been looking at me as I was speaking to him. He looked down and away.
I took that, based on my training and experience, to be that he just really didn't want to answer me, because—and that was an affirmative. So then I immediately followed up with the follow up question.
Q. Do you remember what you said to that?
A. Yes. I asked him to the [e]ffect if she sells it to him or if she gives it to him.
¶10 Deputy Johnson again reiterated that K.H. did not deny that Murphy gave him the methamphetamine. The prosecution subsequently played the audio recording of the hospital interview. The prosecutor paused the recording at the point in the interview when Deputy Johnson asked K.H. if he got the methamphetamine from Murphy and asked him what he observed during this portion of the hospital interview:
A. That's when his body language changed. He looked down and away from me and I took that, just based on his body language and the context of the question, and the context of the conversation we were having. Just prior to that, he told me that didn't remember. Well, I believed that he did remember, he just didn't want to tell me so that's why I changed, instead of giving him an open-ended question of who'd you get it from, I just asked him directly, did you get it from [Murphy], and his body language changed, leading me to believe that that was an affirmative and that's why I then stated, yeah, okay, and then ... immediately followed up with, did she just give it to you, or did she sell it to you?
¶11 At the conclusion of the trial, the jury found Murphy guilty of distributing methamphetamine and contributing to the delinquency of a minor.
¶12 Murphy appealed, and a division of the court of appeals reversed. The division analyzed Deputy Johnson's testimony describing the hospital interview under Venalonzo v. People, 2017 CO 9, ¶ 22, 388 P.3d 868, 875, and concluded that it "exceeded the bounds of CRE 701" and amounted to improper lay testimony because it "provided more than an opinion or inference rationally based on his perception." Murphy, ¶ 21. The division concluded that Deputy Johnson interpreted K.H.'s body language based on his training and experience. Id.
¶13 Judge Berger specially concurred. He agreed with the majority's analysis that Deputy Johnson's testimony was based on specialized knowledge, but he expressed concern with the majority's body language analysis, suggesting that it created an unworkable rule. Id. at ¶¶ 32-33, 41-43 (Berger, J., specially concurring).
¶14 We granted certiorari and now reverse.4 II. Analysis
¶15 We begin by outlining the appropriate standard of review. Next, we detail the relevant case law distinguishing lay opinion from expert opinion testimony. Applying the applicable law to the specific facts of this case, we conclude that the trial court did not abuse its discretion by admitting Deputy Johnson's testimony as lay opinion because it was predicated on rationally drawn conclusions derived from his observations and perception of K.H.'s body language. We further conclude that Deputy Johnson's passing reference to his training and experience did not render his testimony expert opinion under CRE 702 and that his testimony did not improperly opine on the credibility of another witness. Accordingly, we reverse the judgment of the court of appeals.
A. Standard of Review ¶16 We review a trial court's evidentiary rulings for an abuse of discretion. People v. Stewart, 55 P.3d 107, 122 (Colo. 2002). A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair. Id. With this standard in mind, we turn to the applicable law.
B. Law ¶17 A witness's testimony may be classified as lay testimony, lay opinion testimony, or expert testimony. The common law typically confined lay witness testimony to stating facts, as opposed to providing opinions, inferences, or conclusions. See 1 Charles McCormick, McCormick on Evidence § 11 (8th ed. 2020). However, under the Colorado Rules of Evidence, if a lay witness meets the requirements of Rule 701, he or she may provide opinion testimony; otherwise, lay witnesses are still limited to relaying facts. See People v. Munoz-Casteneda, 2012 COA 109, ¶ 11, 300 P.3d 944, 948 ("[T]he role of a fact witness is to relate, based on personal knowledge, information or events relevant to an issue at trial.").
¶18 Under CRE 701, testimony constitutes proper lay opinion testimony where it is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Expert opinion testimony, in contrast, is "scientific, technical, or other specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue." CRE 702. It is the expert's "knowledge, skill, experience, training, or education" that provides the requisite foundation for that specialized knowledge. Id. ¶19 "[T]he critical factor in distinguishing between lay and expert testimony is the basis for the witness's opinion." Venalonzo, ¶ 22, 388 P.3d at 875. This distinction is not predicated on whether a witness draws on personal experience as the basis for his or her testimony, because all witnesses draw upon their personal experiences when testifying. Id. Courts must look to "the nature of the experiences that could form the opinion's basis" to determine whether the testimony is lay or expert opinion. Id. ¶20 Specifically, trial courts must determine whether such an opinion "could be reached by any ordinary person" and "whether ordinary citizens can be expected to know certain information or to have had certain experiences." People v. Rincon, 140 P.3d 976, 983 (Colo. App. 2005) (citing United States v. McDonald, 933 F.2d 1519, 1522 (10th Cir. 1991) ). To be classified as expert testimony, the opinion must be based on "that which goes beyond the realm of common experience and requires experience, skills, or knowledge that the ordinary person would not have." Venalonzo, ¶ 22, 388 P.3d at 875. ¶21 Determining whether testimony constitutes lay testimony, lay opinion testimony, or expert testimony becomes increasingly more complicated when the witness is a police officer. Police officers frequently provide lay opinion testimony based on their perceptions and observations. Stewart , 55 P.3d at 122-23. In determining the admissibility of such testimony as lay opinion, the legal standard is the same. That is, the court must consider whether the testimony could be based on an ordinary person's experience or knowledge. Venalonzo, ¶ 23, 388 P.3d at 876.
¶22 With these principles in mind, we now turn to the admissibility of Deputy Johnson's testimony under CRE 701.
C. Application
1. Admissible Lay Opinion Testimony ¶23 Mindful of the trial court's broad discretion regarding evidentiary questions, we conclude that Deputy Johnson's testimony regarding K.H.'s body language was properly admitted by the trial court as lay opinion testimony. Deputy Johnson had sufficient opportunity to observe K.H. and draw rational inferences based on the Deputy's personal observations and ordinary life experience and knowledge. See People v. Jones, 907 P.2d 667, 669 (Colo. App. 1995).
¶24 We begin our analysis by recognizing that the determination of whether opinion testimony regarding body language is admissible under CRE 701 or CRE 702 is inherently fact specific and requires careful examination on a case-by-case basis. Certain types of body language, like the myriad hand signals of a Colorado Rockies third base coach or the gestures of the conductor of the Colorado Symphony, may lie outside an ordinary person's knowledge and experience. Other types of body language, however, are very familiar to ordinary people because everyday social interactions present countless opportunities to observe body language and ascribe meaning to it.
¶25 For instance, people know from their everyday life experiences that a non-verbal response can be a form of acknowledgement. When someone nods their head up and down, an ordinary person could rationally infer, based on their own experiences, that this usually means "yes." An ordinary person could also infer that a thumbs up typically denotes approval.
¶26 Similarly, the non-verbal response at issue here is the type of body language that ordinary people have likely experienced. Anyone who has interacted with children, for example, could infer that a child who looks away or avoids eye contact when confronted about their misbehavior ("Did you take the cookie?" "Did you hit your brother?") may be tacitly acknowledging that misbehavior. And, while Deputy Johnson had training and experience in conducting witness interviews, it was not because of his training and experience that he was able to observe and form an opinion about K.H.'s body language. Rather, he drew an inference from K.H.'s body language that an ordinary person could have drawn based on everyday experience. Thus, Deputy Johnson's testimony regarding body language was properly admitted by the trial court. ¶27 Additionally, when "a witness has personally observed the physical activity of another, and summarizes his ‘sensory impressions thereof,’ the witness'[s] conclusions are admissible." People v. Acosta, 2014 COA 82, ¶ 33, 338 P.3d 472, 479 (quoting People v. Farley, 712 P.2d 1116, 1119 (Colo. App. 1985) ). "While it is axiomatic that witnesses should relate facts and not conclusions," an exception applies where the witness personally observed the activity. Elliott v. People, 176 Colo. 373, 490 P.2d 687, 689 (1971). ¶28 A witness can testify in this manner because "it would be difficult, if not impossible, to accurately and vividly describe [a person's] bodily movements to the jury in a completely factual manner." Id. This is the case here. If Deputy Johnson merely stated that K.H. looked down and away, without explaining how he interpreted that movement in the context of the entire interview, the jury would not understand why Deputy Johnson then asked, "Did she just give it to you or did she sell it to you?" Under these specific circumstances, it was appropriate for Deputy Johnson to explain that he took K.H.'s body language as an acknowledgement that he got the methamphetamine from Murphy.
¶29 The division's determination that Deputy Johnson's testimony constituted improper lay opinion was, accordingly, in error. Deputy Johnson's opinion testimony was rationally based on his observations and perception, was helpful to the jury, and was not—as we address next—drawn from his specialized knowledge. Thus, we conclude that the testimony constitutes admissible lay opinion testimony under CRE 701.
2. Reference to an Officer's Training and Experience ¶30 In concluding that Deputy Johnson's testimony exceeded the bounds of CRE 701, the division looked to his use of the phrase "based on my training and experience." The division observed that "when a witness testifies based on his or her ‘training and experience,’ courts generally conclude that the witness provided expert testimony." Murphy, ¶ 15. However, this statement, alone, is not dispositive as to whether testimony is expert testimony.
¶31 This court has recognized that simply referencing one's "training and experience" does not transform an officer's lay opinion testimony into expert testimony. See Vigil v. People, 2019 CO 105, ¶ 28, 455 P.3d 332, 339 (reasoning that, though the testifying officer referenced his experience and training on evidence collection, his testimony on shoe print size comparison did not constitute expert testimony); People v. Kubuugu, 2019 CO 9, ¶ 13, 433 P.3d 1214, 1217 (noting that an ordinary person could have formed the same opinion regarding the defendant's intoxicated state despite the officer's training and years of experience); People v. Gallegos, 644 P.2d 920, 928 (Colo. 1982) ("That [the officer] based his conclusion in part on his experience as a police officer does not render his testimony inadmissible."); see also People v. Oliver, 2020 COA 97, ¶¶ 48-49, 474 P.3d 207, 220-21 (concluding that, despite referring to his training and experience, an officer's observations and deductions about prison contraband was not "beyond the realm of common experience"). ¶32 That is to say, testimony is not automatically considered expert opinion testimony simply because the witness has extensive training and experience—it is the basis of the witness's opinion that is determinative. Venalonzo, ¶ 22, 388 P.3d at 875 ; People v. Ramos, 2017 CO 6, ¶ 9, 388 P.3d 888, 891 ("[The officer's] extensive experience in identifying blood patterns, by itself, did not transform his testimony from lay to expert."); cf. Romero v. People, 2017 CO 37, ¶ 15, 393 P.3d 973, 977 ("[A]n ordinary citizen could not ... possess the experience, skills, or knowledge required to understand the concept of ‘grooming’ as it relates to sexual predation.").
¶33 It is also significant here that the prosecution did not elicit any testimony regarding Deputy Johnson's training and experience in conducting witness interviews. Under these circumstances, Deputy Johnson's passing reference could not reasonably have been understood to suggest that his opinion was entitled to any greater weight than the opinion of anyone capable of observing body language.
¶34 Thus, we conclude that Deputy Johnson's opinion testimony was based on his experience as an ordinary person, and that his passing reference to his "training and experience" under these circumstances did not transform his lay opinion testimony into expert testimony.
3. Statement on the Credibility of a Witness ¶35 The division majority concluded, based on case law from other jurisdictions, that testimony from law enforcement officers interpreting body language is inadmissible as lay opinion testimony. Murphy, ¶¶ 17, 20. In drawing this conclusion, the majority relied on cases that were predicated on "the familiar principle that one witness cannot express an opinion of the credibility of another witness."5 Id. at ¶ 38 (Berger, J., specially concurring). ¶36 The division is correct that "asking a witness to opine on the veracity of another witness is prejudicial" and "invades the province of the fact-finder," Liggett v. People, 135 P.3d 725, 732 (Colo. 2006), such that we generally prohibit counsel from asking a witness to comment on the credibility of another, id. at 727. ¶37 However, if the purpose of the testimony elicited is not to comment on another witness's credibility, but rather for the narrow purpose of explaining an officer's interviewing tactics, the testimony is proper. Davis v. People, 2013 CO 57, ¶ 1, 310 P.3d 58, 59 (concluding that the detective's testimony was not offered as a credibility opinion, but instead as context for interview tactics).
¶38 Here, just before Deputy Johnson's testimony about K.H.'s change in body language, the Deputy testified:
[K.H.] told me that [he] didn't remember. Well, I believed that he did remember, he just didn't want to tell me so that's why I changed, instead of giving him an open ended question of who'd you get it from, I just asked him directly, did you get it from [Murphy] ... ?
Deputy Johnson's testimony that he believed that K.H. did remember was not elicited for the purpose of commenting on K.H.'s truthfulness. Instead, consistent with Davis, the testimony was elicited to provide context for the Deputy's interrogation tactics and decisions. Specifically, the testimony provided context for why he switched, at that moment, from asking open-ended questions to asking the follow-up leading question: "[D]id you get it from [Murphy]?"6 ¶39 And, while it would have been the better practice to provide a contemporaneous limiting instruction, no request for such an instruction was made and the lack of an instruction does not amount to reversible plain error. Davis, ¶ 21, 310 P.3d at 63-64.
¶40 We note, also, that any concern under CRE 608 with respect to Deputy Johnson's testimony in this regard is undermined by K.H.'s own testimony that, before Deputy Johnson asked him if he got the drugs from Murphy, K.H. told the Deputy he knew where he got the drugs and that he did not want to tell him.
¶41 Because the trial court reasonably concluded that Deputy Johnson's testimony constituted admissible lay opinion testimony and did not amount to an improper statement on the credibility of another witness, we reverse the judgment of the court of appeals.
III. Conclusion
¶42 For the foregoing reasons, we reverse the judgment of the court of appeals, and we remand for further proceedings consistent with this opinion.
CHIEF JUSTICE BOATRIGHT concurs in the judgment.
JUSTICE GABRIEL dissents.
CHIEF JUSTICE BOATRIGHT, concurring in the judgment.
¶43 "The line between opinion and fact is at best only one of degree ...." Cent. R.R. Co. of N.J. v. Monahan, 11 F.2d 212, 214 (2d Cir. 1926). But as the late Justice Cardozo recognized, a "difference is no less real because it is of degree." Indeed, I view the difference between fact and opinion testimony as crucial to this case. In recognizing this difference, I reach the same ultimate conclusion as the majority — that Deputy Johnson's testimony was properly admitted —but I reach this conclusion for different reasons. The majority holds that Deputy Johnson's testimony was properly admitted as lay opinion testimony, but in my view, Deputy Johnson testified to K.H.'s body language for the purpose of explaining how the body language shifted his interview tactics. Therefore, I would conclude that Deputy Johnson's testimony was proper as an explanation of an investigative interview, not as a lay opinion.
¶44 An example illustrates the distinction between opinion and explanation as I see it here. Suppose a lay witness testifies that a car was "going very fast," thus raising the issue of whether the testimony is an opinion. The answer depends on the purpose for which the testimony is offered. If the purpose is to prove that the car was speeding (e.g., "I thought the car was going very fast, in excess of the speed limit"), then it would be an opinion. On the other hand, if the purpose is to explain why the witness could not identify the driver (e.g., "I could not tell who was driving because the car was going very fast"), then it would not be an opinion; instead, it would be an explanation of the testimony. Testimony like this shows up in many contexts, including the one at issue here: an officer explaining his strategy during an investigative interview. See Davis v. People, 2013 CO 57, 310 P.3d 58.
¶45 In Davis —without analyzing whether the testimony was lay or expert opinion—we held that "a detective may testify about his or her assessments of interviewee credibility when that testimony is offered to provide context for the detective's interrogation tactics and investigative decisions." ¶ 19, 310 P.3d at 63. We focused our analysis on the purpose of the testimony, and we emphasized that "[t]he admissibility of any testimony hinges on the particular circumstances under which it is elicited and offered." Id. at ¶¶ 19, 21, 310 P.3d at 63. Ultimately, we concluded that testimony commenting on credibility is admissible where it is offered for the narrow purpose of explaining interview tactics.1 Id. at ¶ 22, 310 P.3d at 64. ¶46 Here, the majority concludes that Deputy Johnson provided lay opinion testimony and rests its decision on CRE 701 —but I would conclude that Deputy Johnson provided an explanation of an investigative interview under Davis. Before reaching the issue of lay opinion testimony under CRE 701, we must first determine whether the testimony was an opinion at all, keeping in mind the purpose for which the testimony was offered. The majority's own words prove my point. In its analysis, the majority identifies the purpose of Deputy Johnson's testimony: "If Deputy Johnson merely stated that K.H. looked down and away, without explaining how he interpreted that movement in the context of the entire interview, the jury would not understand why Deputy Johnson then asked, ‘Did she just give it to you or did she sell it to you?’ " Maj. op. ¶ 28 (emphases added). I agree. It would be difficult for the jury to understand why Deputy Johnson asked the follow-up question without Deputy Johnson's explanation. But an explanation of how an interview was conducted to provide context for that interview is not opinion testimony; instead, it is the kind of testimony that Davis allows.
¶47 To explain my position, I highlight the purpose of Deputy Johnson's testimony. Deputy Johnson relayed his factual observations of K.H.'s gestures and then explained why those gestures led him to ask the questions he did:
So I asked him to the effect directly, did you get it from [Murphy]? [K.H.] did not deny right away. Instead, his body language changed. He looked—had been looking at me as I was speaking to him. He looked down and away.
I took that, based on my training and experience, to be that he just really didn't want to answer me, because—and that was an affirmative. So then I immediately followed up with the follow up question.
Further, his testimony served to explain a portion of the interview where K.H. apparently responded to a question, yet no spoken words were discernable from the recording: "Did you get it from [Murphy]? Yeah, okay ...." Because K.H. didn't audibly answer Deputy Johnson's question in the recording, Deputy Johnson needed to explain to the jury why he seemingly answered his own question with, "Yeah, okay." Thus, at trial, Deputy Johnson explained,
That's when [K.H.'s] body language changed. He looked down and away from me and I took that, just based on his body language and the context of the question, and the context of the conversation we were having. Just prior to that, he told me he didn't remember. Well, I believed that he did remember, he just didn't want to tell me so that's why I changed , instead of giving him an open-ended question of who'd you get it from, I just asked him directly, did you get it from [Murphy], and his body language changed, leading me to believe that that was an affirmative and that's why I then stated , yeah, okay, and then I ... immediately followed up with, did she just give it to you, or did she sell it to you?
(Emphases added.) In Davis, we concluded that testimony offered for this purpose—specifically, explaining interview strategy and investigative decisions—is permissible.
¶48 The court of appeals' analysis illustrates the dangers of overlooking the purpose of testimony. The division cited an excerpt from the trial transcript that was incomplete, thereby overlooking a fundamental aspect of Deputy Johnson's testimony. Specifically, the division quoted Deputy Johnson's testimony when he stated, "and that was an affirmative." People v. Murphy , 2019 COA 39, ¶ 23, ––– P.3d ––––. If the testimony did in fact end there, then it would be an opinion. But the testimony did not end there. The context of that quote reveals that Deputy Johnson was explaining his interview strategy:
I took that, based on my training and experience, to be that he just really didn't want to answer me, because—and that was an affirmative. So then I immediately followed up with the follow-up question.
(Emphasis added.) By omitting this context, the division misunderstood the purpose of the testimony—that Deputy Johnson testified to his understanding of K.H.'s non-verbal response to explain why he asked a follow-up question. Unlike the division, the majority properly identifies this context, but it then fails to recognize the explanatory nature of Deputy Johnson's testimony.
¶49 Consequently, the majority and I reach the same outcome, but our respective justifications differ. In my view, Deputy Johnson's testimony was properly admitted as an explanation of an investigative interview under Davis , not lay opinion testimony under CRE 701. Therefore, I concur in the judgment.
JUSTICE GABRIEL, dissenting.
¶50 This case principally presents the question of whether a school resource officer's interpretation, based on his training and experience, of a key witness's body language constituted improper lay testimony. A division of our court of appeals unanimously concluded that the officer's testimony was improper, People v. Murphy, 2019 COA 39, ¶¶ 20-25, ––– P.3d ––––, but the majority here disagrees and reverses the division's judgment, maj. op. ¶¶ 1, 42. Because I believe that the division's analysis and conclusion were correct, I would affirm. Accordingly, I respectfully dissent.
I. Factual Background
¶51 As the majority observes, K.H., who was then fifteen years old, attended a concert with his adult stepsister, defendant Justine Lynn Murphy. The next day, K.H. appeared ill and disclosed that he had used methamphetamine the night before.
¶52 As pertinent here, K.H. was admitted to a local hospital for evaluation and treatment, where he was interviewed by school resource officer, Deputy Mark Johnson. The deputy asked K.H. if he had obtained the methamphetamine from Murphy. K.H. stated that he shook his head "no," but the deputy contended that K.H. did not immediately deny that Murphy had given him the drugs. Instead, according to the deputy, K.H.'s body language changed. The deputy said that K.H. had been looking at the deputy but then looked down and away. The deputy observed, "I took that, based on my training and experience , to be that he just really didn't want to answer me, because—and that was an affirmative." (Emphasis added.) The deputy then elaborated:
Just prior to that, he told me he didn't remember [who gave him the drugs]. Well, I believed that he did remember, he just didn't want to tell me so that's why I changed, instead of giving him an open-ended question of who'd you get it from, I just asked him directly, did you get it from [Murphy], and his body language changed, leading me to believe that that was an affirmative ....
¶53 The deputy then proceeded to ask whether "she" gave or sold K.H. the drugs, and K.H. responded, "Sold it to me," although K.H. asserts that he did not hear the deputy refer to "she" and that, in his response, he was not referring to Murphy.
¶54 Ultimately, Murphy was charged with distributing methamphetamine and contributing to the delinquency of a minor. Prior to trial, the People designated the deputy as an expert in witness interviewing in order to allow them to introduce the foregoing body language testimony. Murphy objected, but the court concluded that such testimony was proper lay testimony.
¶55 The case proceeded to trial, and at trial, the deputy testified, over Murphy's objection, as set forth above. Notably, both prior to trial and throughout the trial, K.H. consistently denied that Murphy had given him the drugs, noting that when the deputy asked him if she had done so, he shook his head no. He stated instead that he had obtained the drugs from a dealer friend whom he had met in the bathroom at the concert.
¶56 Because no physical evidence tied Murphy to the drugs at issue, the case turned on K.H.'s credibility, and, as a result, the deputy's testimony took on particular significance. Accordingly, in both closing and rebuttal arguments, the prosecutor emphasized the detective's testimony, telling the jury that K.H. had answered the deputy "in the affirmative with his body language."
¶57 The jury ultimately convicted Murphy, and she appealed, arguing that the deputy's testimony was improper lay testimony. The division agreed, determined that the error was not harmless, reversed Murphy's conviction, and remanded for a new trial. Murphy, ¶¶ 20-29. We then granted certiorari.
II. Analysis
¶58 I begin by explaining why I believe that the deputy's testimony here was improper. I then address why I believe the error in admitting that testimony was not harmless.
A. Improper Lay Testimony
¶59 CRE 701 and 702 distinguish lay from expert testimony. CRE 701 provides:
If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.
¶60 CRE 702, in turn, provides, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."
¶61 Construing these rules in Venalonzo v. People, 2017 CO 9, ¶ 22, 388 P.3d 868, 875, we observed:
[T]he critical factor in distinguishing between lay and expert testimony is the basis for the witness's opinion. That is, the proper inquiry is not whether a witness draws on her personal experiences to inform her testimony; all witnesses rely on their personal experience when testifying. Rather, it is the nature of the experiences that could form the opinion's basis that determines whether the testimony is lay or expert opinion.
¶62 We thus held:
[I]n determining whether testimony is lay testimony under CRE 701 or expert testimony under CRE 702, the trial court must look to the basis for the opinion. If the witness provides testimony that could be expected to be based on an ordinary person's experiences or knowledge, then the witness is offering lay testimony. If, on the other hand, the witness provides testimony that could not be offered without specialized experiences, knowledge, or training, then the witness is offering expert testimony. Id. at ¶ 23, 388 P.3d at 875.
¶63 In making this determination, we have deemed it relevant, although not dispositive, that the witness based his or her testimony on his training and experience. See, e.g., People v. Kubuugu, 2019 CO 9, ¶ 14, 433 P.3d 1214, 1217 ; People v. Ramos, 2017 CO 6, ¶ 9, 388 P.3d 888, 891. This makes sense because a party should not be permitted to avoid the procedural requirements for expert witness designations by deeming someone a lay witness and then cloaking the witness with the "aura of special reliability and trustworthiness" that tends to attach to expert testimony by presenting his or her education and experience to the jury and having the witness testify based on that education and experience. People v. Koon, 724 P.2d 1367, 1371 (Colo. App. 1986).
¶64 Here, unlike the majority, I believe that the portion of the deputy's testimony at issue was opinion testimony and that it constituted expert and not lay opinion. As noted above, the deputy interpreted K.H.'s body language to indicate (1) a deception by K.H. (i.e., that K.H. was not being truthful when he said that he did not recall who gave him the drugs); (2) a desire on K.H.'s part not to speak; and (3) an affirmative statement by K.H. that Murphy had, indeed, provided the drugs to him. Moreover, in both closing and rebuttal arguments, the prosecutor emphasized the deputy's testimony, telling the jury that when the deputy asked K.H. whether Murphy had given him the drugs, K.H. answered "in the affirmative with his body language." The prosecutor did not make this argument to explain to the jury why the deputy did what he did. To the contrary, the prosecutor relied on the deputy's testimony to prove that Murphy gave K.H. the drugs. Accordingly, in my view, the deputy's testimony was opinion testimony. ¶65 In addition, I believe that the deputy's testimony constituted expert, and not lay, opinion. As noted above, the deputy was initially designated as an expert in witness interviewing, and the designation was made precisely to allow the deputy to testify as he did. And although the trial court concluded that such testimony would be proper lay testimony, the deputy proceeded to testify, based on his training and experience as a law enforcement officer, regarding his interpretation of K.H.'s body language. Moreover, in doing so, the deputy did not just describe what he observed, which would, of course, be appropriate lay testimony. Rather, he interpreted K.H.'s body language to indicate deception, K.H.'s desire not to speak, and an affirmative statement that Murphy gave him the drugs.
¶66 In my view, this was not the kind of testimony that could be expected based on an ordinary person's experiences or knowledge. On the facts and in the context presented here, it was opinion testimony, based on the deputy's specialized training and experience (particularly relating to witness interviewing), as to the meaning of a witness's body language in the context of a police interrogation, and it was therefore expert testimony. See Venalonzo, ¶ 23, 388 P.3d at 875.
¶67 The fact that the deputy's testimony amounted to an opinion on K.H.'s credibility only exacerbated the impropriety of this testimony. It has long been settled that a witness may not comment on another witness's veracity. See id. at ¶ 32, 388 P.3d at 877 ; People v. Penn , 2016 CO 32, ¶ 36, 379 P.3d 298, 306 ; Liggett v. People , 135 P.3d 725, 731 (Colo. 2006) ; People v. Eppens, 979 P.2d 14, 17 (Colo. 1999). Yet, here, the deputy was permitted to testify, based on his specialized training and experience, that when K.H. said that he did not recall who gave him the drugs, he really did recall but just did not want to tell the deputy. The deputy was then permitted to testify that, through K.H.'s body language, K.H. affirmed that Murphy gave him the drugs, notwithstanding the fact that K.H. consistently denied that Murphy did so. In my view, this testimony amounted to improper commentary on K.H.'s credibility, and because such a credibility determination was for the jury to make, I believe that the deputy's testimony was improper on this ground as well.
¶68 In so concluding, I am unpersuaded by the majority's view, maj. op. ¶¶ 37-38, that the deputy's testimony was not elicited to comment on K.H.'s credibility but rather was for the purpose of explaining the deputy's actions and therefore was permissible under Davis v. People, 2013 CO 57, 310 P.3d 58. In Davis, a detective explained why, during a witness interview, her tone became more heated and confrontational. Id. at ¶ 5, 310 P.3d at 59. She further explained that law enforcement officers, as an interrogation tactic, will often accuse an interviewee of not being forthcoming and of involvement in the crime at issue. Id. at ¶ 6, 310 P.3d at 60. We ultimately concluded that a detective may testify regarding his or her assessment of interviewee credibility when the testimony is offered to provide context for the officer's interrogation tactics. Id. at ¶ 19, 310 P.3d at 63.
¶69 In my view, the testimony at issue here went well beyond an explanation of the deputy's interrogation tactics. As noted above, although the deputy testified that after K.H. stated that he did not recall who gave him the drugs, the deputy changed tactics and asked directly whether Murphy did so, the deputy's further testimony regarding his interpretation of K.H.'s body language was not given in the context of explaining the deputy's interrogation tactics. Specifically, this was not a case in which a police officer, as an interrogation tactic, accused an interviewee of not being forthcoming and in which the jury ultimately heard that accusation (e.g., in a video of the interrogation). Here, the only testimony that explained the deputy's interrogation tactics was his statement that he changed strategy and asked a direct question as to whether Murphy gave him the drugs, rather than asking an open-ended question as to who did. The deputy's testimony that he interpreted K.H.'s body language as a deception and that, although K.H. consistently stated that Murphy did not give him the drugs, his body language meant otherwise went well beyond the limited type of comment on a witness's credibility that we upheld in Davis. And for the reasons set forth above, the record establishes that the purpose of this testimony was to prove that Murphy gave K.H. the drugs, which is precisely how the prosecutor used the testimony in closing and rebuttal arguments.
¶70 For these reasons, I believe that the deputy's testimony was improper, and I proceed to the question of whether the admission of such testimony was harmless.
B. Harmless Error
¶71 We review a preserved nonconstitutional trial error like that at issue here for harmless error. Hagos v. People, 2012 CO 63, ¶ 12, 288 P.3d 116, 119. Under this standard, we will reverse only when the error affects the substantial rights of a party, that is, "if the error ‘substantially influenced the verdict or affected the fairness of the trial proceedings.’ " Id. (quoting Tevlin v. People, 715 P.2d 338, 342 (Colo. 1986) ).
¶72 Here, I cannot say that the error in admitting the deputy's testimony was harmless. The evidence in this case was not overwhelming. No physical evidence tied Murphy to the drugs at issue, and K.H. testified consistently at trial that Murphy did not give him the drugs. Accordingly, the case turned principally on K.H.'s credibility, and the deputy's testimony as to the meaning of K.H.'s body language and as to K.H.'s credibility was the primary, if not the sole, evidence connecting Murphy to those drugs. Moreover, the deputy's interpretation of K.H.'s body language and the basis for that interpretation were disputed at trial. Specifically, as noted above, the deputy testified that K.H. said that he did not recall who gave him the drugs but the deputy believed, based on K.H.'s body language, that K.H. did recall and that he just did not want to tell the deputy. From there, the deputy inferred that Murphy provided the drugs. K.H., in contrast, testified that he told the deputy that he did recall who gave him the drugs but that he did not want to tell the deputy, and K.H. testified that the source was a dealer friend and not Murphy. Finally, the prosecutor emphasized the deputy's testimony in both closing and rebuttal arguments, stating unconditionally that K.H.'s body language indicated an affirmative response to the deputy's question as to whether Murphy gave him the drugs, notwithstanding K.H.'s testimony to the contrary.
¶73 To me, these facts compel the conclusion that the deputy's testimony substantially influenced the jury's verdict.
III. Conclusion
¶74 For the foregoing reasons, I believe that the deputy's testimony regarding K.H.'s credibility and body language was improper and should not have been admitted. Because I further believe that the admission of this testimony was not harmless, I would conclude that Murphy is entitled to a new trial.
¶75 Accordingly, I would affirm the judgment of the division below, and therefore I respectfully dissent.
1 We granted certiorari to review the following issues:
1. Whether the court of appeals erred in finding that a police officer's testimony about the conclusions he drew from a witness's body language was improper lay testimony.
2. Whether the court of appeals erred in finding that the error was not harmless.
2 K.H. referred to Murphy as his step-sister, although his father and Murphy's mother apparently live together in a committed relationship, but are not married.
3 Defense counsel also objected under CRE 403 and CRE 608 ; however, the trial court denied the objection as a whole and stated that, as then framed, "the evidence [was] not being offered for purposes of testimony of truthfulness pursuant to C.R.E. 608."
4 The division also concluded that admitting Deputy Johnson's testimony was not harmless error and, therefore, it reversed and remanded the case for a new trial. Murphy, ¶¶ 26-29, 31. Because we conclude that there was no error in admitting Deputy Johnson's testimony, we do not reach this issue.
5 The division majority cites to five separate cases from other jurisdictions for the proposition that lay opinion testimony interpreting the meaning of a witness's body language is impermissible; however, in these cases, the testimony was deemed inadmissible because it commented on the credibility of another witness, not because it was expert testimony in the guise of lay opinion testimony. Murphy, ¶ 17 (citing United States v. Williams, 133 F.3d 1048, 1053 (7th Cir. 1998) (determining that admission of hearsay statements and improper special agent testimony regarding the defendant's demeanor was erroneous); State v. Reimer , 189 Ariz. 239, 941 P.2d 912, 915 (Ariz. Ct. App. 1997) (finding reversible error in the trial court's admission of an officer's credibility testimony); Edwards v. State, 248 So. 3d 166, 170 (Fla. Dist. Ct. App. 2018) (concluding that officer testimony about body language as deception amounted to inadmissible evidence related to truthfulness); People v. O'Donnell, 390 Ill.Dec. 373, 28 N.E.3d 1026, 1033 (Ill. App. Ct. 2015) (determining that the officer's testimony was inadmissible as a comment on the truthfulness of the defendant's story); People v. Henderson, 394 Ill.App.3d 747, 333 Ill.Dec. 667, 915 N.E.2d 473, 478 (2009) ("Using such a witness as a human lie detector goes against the fundamental rule that one witness should not be allowed to express his opinion as to another witness's credibility.")). We find these cases to be inapposite given the facts of this case.
6 Our analysis in Davis focused entirely on the admissibility of the challenged testimony under CRE 608. See Davis, ¶¶ 14-19, 310 P.3d at 62-63. Davis did not involve testimony regarding witness body language, and we did not, accordingly, reach that issue. Here, we apply Davis narrowly to the Deputy's testimony explaining why he changed his interrogation style immediately before asking the leading question that prompted K.H.'s non-verbal response.
1 I recognize that Davis analyzed officer testimony commenting on credibility; however, I nonetheless find Davis instructive to the extent it analyzed officer testimony describing how an interview was conducted.